IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

OPIS MANAGEMENT RESOURCES,
LLC; RULEME CENTER, LLC; GULF
COAST HEALTHCARE, LLC; SA-PG-
JACKSONVILLE, LLC; SA-PG-SUN CITY
CENTER, LLC; CYPRESS HEALTH GROUP,
LLC; and CONSULATE HEALTH CARE, LLC,

    Plaintiffs,

vs.                                                        CASE NO. 4:11-cv-400/RS-WCS

ELIZABETH DUDEK, Secretary,
Florida Agency for Health Care
Administration,

    Defendant.

_____/

## ORDER

Before me are the cross-motions for summary judgment (Docs. 22 & 26).

### Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). In other words, the basic issue before the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of

showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (*citing Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

**Analysis**

Plaintiffs claim that they are caught in a legal Catch-22. They claim that as the law currently stands, their compliance with state law violates federal law and their compliance with federal law violates state law. As a result, they argue the state law is invalid.

Florida law requires nursing homes to "furnish to the spouse, guardian, surrogate, proxy, or attorney in fact . . . of a former resident . . . a copy of that resident's records which are in the possession of the facility." Further, the law provides that "copies of such records shall not be considered part of the deceased resident's estate and may be made available prior to the administration of an estate, upon request, to the spouse, guardian,

surrogate, proxy, or attorney in fact." FLA. STAT. § 400.145.[1]  Through its representative, Florida's Agency for Health Care Administration ("AHCA") has cited Plaintiffs, operators and manages of nursing facilities, for violating this provision.  (Doc. 1, ¶5). Namely, Plaintiffs have refused to provide healthcare records of deceased residents as required by Florida law.  Plaintiffs claim that their non-compliance is excusable because Section 400.145 is preempted by the Health Insurance Portability and Accountability Act of 1996 ("HIPPA").  They seek a declaratory judgment that Section 400.145 is invalid and injunctive relief prohibiting its enforcement.

The Supremacy Clause of Article VI of the Constitution provides Congress with the power to preempt state law.  *Nat'l Ass'n of State Util. Consumer Advocates v. FCC*, 457 F.3d 1238, 1251 (11th Cir. 2006).  Here, HIPPA provides that provisions of state law which are contrary to HIPPA are preempted unless that state law is "more stringent."  45 C.F.R. §160.203.  *See also* 42 U.S.C. § 1320d-7.  "The Privacy Rule provides a floor of privacy protection. State laws that are more stringent remain in force."  67 Fed. Reg. 53182, 53212 (August, 14, 2002).  Defendant asserts that Section 400.145 is not preempted by HIPPA because it is not contrary to HIPPA, and is more stringent than HIPPA.  (Doc. 26, p.11&15).

HIPPA provides that "covered entities"[2] may not disclose protected health information ("PHI") except to the individual himself, or to his personal representative.[3] A personal representative includes an "executor, administrator, or other person [who] has

---

[1] Section 400.145 applies to both living and deceased residents.  The only dispute here concerns its application to deceased residents.
[2] The parties agree that Plaintiffs are "covered entities."
[3] "A covered entity must . . . treat a personal representative as the individual." 45 C.F.R § 164.502(g)(1).

authority [under applicable state law] to act on behalf of a deceased individual or of the individual's estate." 45 C.F.R. §164.502(g)(4).  In other words, "a covered entity must treat a deceased individual's legally authorized executor or administrator, or a person who is otherwise legally authorized to act on the behalf of the deceased individual or his estate, as a personal representative with respect to protected health information relevant to such representation."  Health Information Privacy, FAQ, Department of Health & Human Services, http://www.hhs.gov/ocr/privacy/hipaa/faq/personal_representatives_ and_minors/222.html.  "Therefore, if it is within the scope of such personal representative's authority under other law, the Rule permits the personal representative to obtain the information or provide the appropriate authorization for its disclosure."  *Id*.

Under Florida probate law, a "personal representative" has the authority to act on behalf of a deceased individual or his estate.  FLA. STAT. § 733.612.  The "personal representative" under Florida law is a term of art distinct from the same term under HIPPA.  In Florida, a "personal representative" means the "fiduciary appointed by the court to administer the estate and what has been known as an administrator . . . or executor."  *Id*. at § 731.201(28).  Plaintiffs assert that the universe of HIPPA personal representatives is limited to this group of court appointed "personal representatives" under Florida probate law.  (Doc. 23, p.7).  Defendant contends that the universe includes those individuals contemplated by Section 400.145.  That is, Defendant argues that HIPPA allows not only executors and administrators to be personal representatives, but "other person[s]" authorized by state law.  (Doc. 26, p12).

The crux of this case then turns on whether Section 400.145 authorizes those identified parties "to act on *behalf* of a deceased individual or of the individual's estate." 45 C.F.R. §164.502(g)(4) (emphasis added).

A fiduciary relationship is created when one acts on behalf of an estate. FLA. STAT. § 731.201(28). This fiduciary relationship, between an executor and the estate, does not necessarily exist in the relationship created under Section 400.145. *See Alvista Healthcare Ctr. v. Miller*, 673 S.E. 2d 96, 128 (Ga. 2009) (Melton, J., dissenting). A decedent's spouse, for example, could seek PHI for any number of reasons which have no relation to a fiduciary purpose. *Id*. A spouse could be trying to establish paternity, or her rights to life insurance. These goals do not conform to HIPPA's purpose to protect privacy and act in the interest of the patient.[4]

Rather, the civil enforcement provisions of Fla. Stat. § 400.023 contain a more apt description of the legislature's intent in regards to the ability to act on behalf of a decedent. A cause of action "may be brought by the resident . . . or by the personal representative of the estate of a deceased resident…." *Id*. The provision comports with Florida's probate law and requires a fiduciary relationship to proceed in a suit on behalf of a deceased resident.

The differences between Section 400.145 and the provisions which give the personal representative the ability to act on behalf of a deceased resident make Section

---

[4] This fiduciary relationship may be why the federal agency which enforces HIPPA's privacy rules, the US Department of Health and Human Services, Office for Civil Rights, seemingly agrees with Plaintiffs' interpretation. "Florida law requires that a person be appointed by a probate court to act on behalf of a deceased individual." (Doc. 23, Exhibit B).

400.145 incongruous with HIPPA's goals.  Under Florida probate law, no person is automatically given rights to be a personal representative.  The testator has the right to name a personal representative in his will.  Fla. Stat. § 733.301(a).  Both named representatives and those selected by statutory preference for the intestate must meet certain qualifications.  *Id*. at § 733.303.   All personal representatives are court appointed.  *Id*. at § 731.201(28).  While spouses and the like are often appointed personal representatives, there are many instances where they are found to be unqualified.  *See, e.g., Jenkins v. Estate of Jenkins*, 384 So. 2d 266, 267 (Fla. 1st DCA, 1980) (battle between decedent's first and second wife to administer his estate).

  Section 400.145, on the other hand, does not contain the same assurances.  Its provisions operate "unless expressly prohibited by a legally competent resident."  Abiding by Section 400.145 could lead to the absurd results.  For example, a decedent could name his daughter as his personal representative for the specific purpose that he is estranged from his spouse.  He likely presumes that the daughter will be making the decisions regarding his affairs after his death.  Yet upon his death both the daughter and spouse would have equal right to access his health records.

  Another absurd result could be a disqualified personal representative being able to access the decedent's health records.  As an extreme example, a convicted felon would be disqualified as a personal representative but qualified under Section 400.145

  Defendant cites a Georgia case which reached a different result.  However, that case is distinguishable.  In *Alvista Healthcare Ctr. v. Miller*, 673 S.E. 2d 96 (Ga. 2009), the Georgia law in question provided that a surviving spouse could receive a deceased

patient's records only if "an executor, administrator, or temporary administrator . . . has not been appointed." (*citing* GA. CODE ANN. §31-33-2). The Florida statute does not contain the same deference. And, I find the dissent in *Miller* more persuasive.

Section 400.145 is preempted because it is contrary to HIPPA. It affords a patient far less protection than the heightened privacy requirements imposed by the federal requirement and is, therefore, not more stringent than HIPPA.[5] For this reason, Section 400.145 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [HIPPA]." 45 C.F.R. § 160.202.

**IT IS ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. 22) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (Doc. 26) is **DENIED**.

3. Florida Statute Section 400.145 is inconsistent with the Health Insurance Portability and Accountability Act and is therefore preempted.

**ORDERED** on December 2, 2011.

/S/ Richard Smoak
**RICHARD SMOAK
UNITED STATES DISTRICT JUDGE**

---

[5] More stringent means. . . with respect to a use or disclosure, the law prohibits or restricts a use or disclosure in circumstances under which such use or disclosure otherwise would be permitted." 45 C.F.R. § 160.202.